UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANITA MUSE ON BEHALF OF A.R.D.                    CIVIL ACTION

VERSUS                                             NO. 08-1132

MICHAEL J. ASTRUE, COMMISSIONER                    SECTION "B" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Anita Muse on behalf of her minor child, A.R.D.,[1] seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  42 U.S.C. § 402 et seq.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

---

[1]Pursuant to this court's General Order issuing its Notice Concerning Personal Data Identifiers dated April 9, 2003 (Rule 12 of this court's Administrative Procedures for Electronic Case Filing), all parties must refer to minors in pleadings filed in this court only by the minor's initials and must refrain from putting dates of birth and social security numbers in public records.

Although ordered to file a memorandum of facts and law, Record Doc. No. 10, plaintiff filed a motion for summary judgment. Record Doc. No. 12. Defendant filed a timely reply memorandum. Record Doc. No. 13.

I.   PROCEDURAL HISTORY

A.R.D. was 15 years old on the date of the hearing before an Administrative Law Judge ("ALJ"). Alleging a disability onset date of July 1, 2000, plaintiff's mother protectively filed an application for SSI on her behalf on January 20, 2006, based on attention deficit hyperactivity disorder ("ADHD"), anxiety, depression and bipolar disorder. (Tr. 9, 26, 54-59, 86-94). After her application was denied, plaintiff filed a timely request for a hearing. A hearing was conducted before an ALJ on June 13, 2007. The ALJ issued a decision dated October 17, 2007, finding that A.R.D. was not disabled. (Tr. 23-33). The Appeals Council denied plaintiff's request for review on January 8, 2008 (Tr. 4-6), and the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review.

II.     STATEMENT OF THE ISSUE ON APPEAL

Despite the court's order that plaintiff should state in her memorandum the specific errors that the ALJ allegedly made, she has not done so.  However, her request for judicial review raises the following issue:

    A.    Whether the ALJ erred in finding that A.R.D. does not meet Listing 112.08 pertaining to personality disorders.

III. ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

    A.    A.R.D. has severe impairments consisting of ADHD, bipolar disorder and depression.

    B.    Her impairments do not meet, medically equal or functionally equal the criteria for any impairment listed in Appendix 1, Subpart P, Part 404.

    C.    There is no evidence of limitations in the domains of caring for oneself and moving about and manipulating objects.

    D.    A.R.D. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being.

    E.    She has not been disabled as defined in the Act since January 20, 2006, the date of the application, through the date of this decision.

(Tr. 26-32).

IV. ANALYSIS

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th

Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(D). In 1996, Congress passed the Personal Responsibility and Work

Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process. This statute applies to all child disability applicants who filed claims on or after August 22, 1996 or whose cases were not finally adjudicated before that date. Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(I).

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability. The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity. If the answer is "yes," the claimant will be found not disabled. If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment. If not, the claimant will be found not disabled. If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in Appendix 1, Subpart P, Part 404 of the Commissioner's regulations ("the Listings"). If

the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled. If not, the claimant will be found not disabled. 20 C.F.R. § 416.924 (2007).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.  Factual Background

A.R.D. testified that she was 15 years old and would be entering the ninth grade. She stated that her grades had been good during the past school year, but that she had had problems with getting into fights and getting into trouble with the teachers. (Tr. 258). She testified that her appetite was good and that she continues to see Dr. Dowling.[2] She said that Dr. Dowling does not give her any medicine and that she did not know what medicines she takes. (Tr. 259).

A.R.D.'s mother, Anita Muse, testified that A.R.D. is an only child. Muse stated that A.R.D. began seeing Dr. Dowling in December 2006. She said that A.R.D. had

---

[2]Although the transcript phonetically spells plaintiff's psychiatrist as Dr. Donnelly, he is actually Dr. Dowling.

changed schools in the past year because A.R.D. felt that the teachers at Terrytown Academy, which she had previously attended, did not like her and picked on her. Muse explained that the change had also been recommended by the Children's Unit where A.R.D. was being treated, as a means to see whether A.R.D.'s problem was caused by the school she attended.

Muse stated that when A.R.D. began having trouble with the teachers and the principal when she started attending the new school. She testified that the new principal asked her to have A.R.D. evaluated again at the Children's Unit and then by Dr. Dowling. (Tr. 260). She said that the Children's Unit told her that A.R.D. did not need a re-evaluation because she had ADHD. However, Muse stated that the principal told her that A.R.D. did not behave like a child with ADHD.

Plaintiff's mother said that after A.R.D. had "a couple of episodes" at the new school, the principal told her that A.R.D. could not return to school until she had been evaluated by Dr. Dowling. Muse testified that Dr. Dowling said that her daughter did not have ADHD. She said that Dr. Dowling diagnosed A.R.D. as bipolar and prescribed Depakote and Risperdal for her.

Muse stated that A.R.D. has had a few outbursts since being treated by Dr. Dowling. She testified that her daughter always talks about killing, that she says she is going to kill her mother and that she had pulled a knife on her father. Plaintiff's mother

said Dr. Dowling had told her that bipolar patients like A.R.D. always think about "killing people or suicide and stuff like that." (Tr. 261).

### C. Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 27-28). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

### D. Plaintiff's Appeal

The ALJ held that A.R.D.'s impairments do not meet, medically equal or functionally equal the criteria of any Listing. Plaintiff contends that the ALJ erred by failing to find that she meets Listing 112.08.

The only medical evidence that A.R.D. cites in support of her appeal are two reports from March 2001. First, she points to a psychiatric evaluation by Carmen R. Ramos, M.D., dated March 7, 2001, in which A.R.D. was diagnosed with oppositional defiant disorder and major depression with psychotic symptoms, resolved. (Tr. 127-30). Second, plaintiff cites a childhood disability evaluation form completed on March 22, 2001 by psychologist Lawrence Guidry, Ph.D., in which Dr. Guidry concluded that A.R.D. met Listing 112.08. (Tr. 131-36).

The record indicates that A.R.D. received SSI benefits based on Dr. Guidry's determination that she met Listing 112.08 until she was re-evaluated, as required by 20 C.F.R. § 416.994(a). On May 27, 2004, L. Barnett, Ph.D., found that, with treatment, A.R.D. had medically improved so that she no longer met Listing 112.08. The Commissioner therefore determined that plaintiff's period of disability had ceased. (Tr. 199-200, 204).[3] The record does not indicate that A.R.D. appealed this decision.

Plaintiff filed a subsequent application for SSI benefits on January 12, 2005, which was denied. (Tr. 92, 205). This decision was not appealed. Neither the Commissioner's May 2004 decision to terminate A.R.D.'s benefits based on medical improvement nor the denial of her January 12, 2005 application for benefits is on appeal to this court, but the evidence on which those decisions were based is in the record.

A.R.D. filed the instant application for benefits on January 20, 2006, alleging a disability onset date of July 1, 2000. However, "[c]laimants applying to the SSI program may not receive payments for a period predating the month in which they apply for benefits." Rosetti v. Shalala, 12 F.3d 1216, 1224 n.20 (3d Cir. 1993) (citing 20 C.F.R. § 416.335) (emphasis added); accord Brown v. Apfel, 192 F.3d 492, 495 n.1 (5th Cir. 1999). The "month following an application . . . fixes the earliest date from which

---

[3]The record contains an undated, unsigned childhood disability evaluation form, which summarizes A.R.D.'s records through May 24, 2004 and which also concludes that she had medically improved. (Tr. 192-98).

benefits can be paid." Hector v. Barnhart, 337 F. Supp. 2d 905, 910 (S.D. Tex. 2004) (citations omitted). Thus, A.R.D. could not receive SSI benefits for any month before her protective filing date of January 20, 2006. In addition, the Commissioner's May 2004 decision to terminate A.R.D.'s benefits and the denial of her January 12, 2005 application for benefits are unreviewable decisions that are res judicata concerning whether she was disabled as of those dates. The evaluations of Drs. Ramos and Guidry from March 2001, which plaintiff cites in support of her argument, are thus irrelevant to the instant case.

Plaintiff bears the burden of proving that she meets or equals a listing. Whether an impairment or combination of impairments meets or equals a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)); Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990); Buras v. Apfel, No. 00-654, 2000 WL 1760704, at *2 (E.D. La. Nov. 29, 2000) (Clement, J.); Tessitore v. Apfel, No. 97-2925, 1998 WL 564292, at *2 (E.D. La. Sept. 3, 1998) (Vance, J.).

Listing 112.08 regarding personality disorders requires that the disorder be:

> [m]anifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness.

> <u>The required level of severity for these disorders is met when the requirements in both A and B are satisfied</u>.
> A. Deeply ingrained, maladaptive patterns of behavior, associated with one of the following:
>> 1. Seclusiveness or autistic thinking; or
>> 2. Pathologically inappropriate suspiciousness or hostility; or
>> 3. Oddities of thought, perception, speech, and behavior; or
>> 4. Persistent disturbances of mood or affect; or
>> 5. Pathological dependence, passivity, or aggressiveness; or
>> 6. Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or
>> 7. Pathological perfectionism and inflexibility;
>
> <u>And</u>
> B. For . . . children (age 3 to attainment of age 18), resulting in <u>at least two</u> of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.08 (emphasis added).

The four areas of age-appropriate functioning in Listing 112.02(B)(2), which are incorporated into Listing 112.08(B) by reference, are cognitive/communicative functioning, social functioning, personal functioning, and concentration, persistence, or pace. <u>Id.</u> § 112.02(B)(2). To meet Listing 112.08(B), A.R.D. must demonstrate <u>marked</u> impairments in at least two of those areas. <u>Id.</u>

Plaintiff cites no medical evidence, other than the two irrelevant evaluations from Drs. Ramos and Guidry, that would carry her burden of proof and substantially support a finding that she meets Listing 112.08. Accordingly, the ALJ did not err by failing to find that she meets or medically equals Listing 112.08.

Furthermore, substantial evidence from the relevant time period supports the ALJ's conclusion that A.R.D. does not functionally equal the listing. An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain. Id. § 416.926a(a).

Psychologist Robert A. McFarlain, Ph.D., completed a disability evaluation form on May 21, 2005 and found that A.R.D. had severe impairments consisting of depression and ADHD. After reviewing her medical and school records, he found that she had a marked limitation in the domain of caring for oneself, less than marked limitation in the domain of interacting and relating with others, and no limitations in the other four domains. Because she had neither any extreme limitations nor marked limitations in at least two domains, Dr. McFarlain opined that her impairments did not meet, medically equal or functionally equal a listing. (Tr. 205-10).

Another psychologist, Lynette Causey, reviewed plaintiff's records and completed a disability evaluation form on March 20, 2006. Dr. Causey observed that A.R.D. has

severe impairments of ADHD and mood disorder. She found that plaintiff has no limitation in the domains of interacting and relating with others and moving about and manipulating objects, and has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and caring for oneself. Dr. Causey did not complete the form concerning the domain of health and physical well-being. Based on these findings, Dr. Causey found that A.R.D.'s impairments did not meet, medically equal or functionally equal any listing. (Tr. 229-34).

Although Dr. McFarlain's and Dr. Causey's opinions conflict, both psychologists concluded that plaintiff does not functionally equal any listing because she does <u>not</u> have either any extreme limitation or marked limitations in any two domains. The ALJ "must resolve conflicts in the evidence." <u>Martinez</u>, 64 F.3d at 174. The ALJ found that A.R.D. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being, while he found no evidence of limitation in the domains of caring for oneself and moving about and manipulating objects. These findings are substantially supported by Dr. MacFarlain's and Dr. Causey's opinions and by the record as a whole.

Records from the relevant time period show that plaintiff's condition improved with treatment when she was compliant with her prescribed medications. A medical condition that can reasonably be remedied by surgery, treatment or medication is not

disabling.  Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Bridges v. Massanari, No. 00-2639, 2002 WL 202221, at *3 (E.D. La. Feb. 7, 2002) (Vance, J.).

  A.R.D.'s medical and school records substantially support the ALJ's conclusion that she had less than marked limitations in any domain of functioning when she took her medications.  Plaintiff's seventh grade teacher, Ellen Fort, completed a questionnaire dated March 2, 2006, in which she stated that A.R.D. was performing at grade level in reading, math and written language.  Fort said that plaintiff had only slight problems with acquiring and using information and attending and completing tasks, which were "fairly typical of that age group."  Fort stated that A.R.D. had expressed anger inappropriately only once during the school year and that she did not need to use behavior modification techniques with plaintiff.  Fort also said that A.R.D. had only slight problems with frustration and patience.  Fort stated that she had not observed that A.R.D. had any medical difficulties, but noted that plaintiff's mother had said that she needed a prescription medication refill.  (Tr. 109-16).

  A.R.D. transferred to Conquering Word Christian Academy the following school year.  Her eighth-grade teacher, Julane Shropshire-Lesene, wrote a letter on September 6,

2007, stating that A.R.D. excels academically and feels good when given a task to do, but is sometimes aggressive and reactive. The teacher observed that A.R.D. sometimes has trouble coping and cannot focus on her school work at those times. She stated that A.R.D.'s personality changes and she reacts forcefully all of a sudden if a situation with classmates does not go her way. Shropshire-Lesene wrote that she has to take A.R.D. aside and calm her rage at these times. (Tr. 119-20).

A.R.D. was treated by a psychiatrist at Jefferson Parish Human Services Children's Unit from February 21, 2006 through January 9, 2007. The medical records from that provider indicate that plaintiff was initially diagnosed with ADHD and an adjustment disorder with disturbance of emotion. (Tr. 225). On March 30, 2006, the diagnosis was changed to ADHD and depressive disorder, not otherwise specified. During the next several months, plaintiff's medications were adjusted. When she reported compliance with her medications, she passed her grade and her mood improved. By August 31, 2006, the doctor noted that plaintiff's depressive disorder had resolved. Although she still had some anger outbursts, improvement was noted with trials of different medications. On October 13, 2006, plaintiff's diagnosis was changed to ADHD and impulse control disorder, not otherwise specified. On January 9, 2007, A.R.D. was discharged because her mother wanted her to be treated by a new doctor. The sole discharge diagnosis was ADHD. (Tr. 240-46).

On December 4, 2006, the principal at Conquering Word required A.R.D. to see psychiatrist, Patrick J. Dowling, M.D., for a mental and physical health evaluation before the principal would allow plaintiff to return to school. (Tr. 118). Dr. Dowling began treating A.R.D. on December 6, 2006. He noted that she had a history of being prescribed medication for ADHD. However, he diagnosed bipolar disorder and began prescribing Risperdal[4] and Depakote.[5] (Tr. 236). On February 28, 2007, he found that she was compliant with her medications and much improved at school, with no new problems. He again diagnosed bipolar disorder, continued the prescriptions for Risperdal and Depakote, and added Topamax.[6] (Tr. 237).

On May 2, 2007, Dr. Dowling noted that plaintiff's compliance with medication was good and that she had only had one outburst at school and one at home since her last visit. Although she appeared very depressed, she reported no new problems. The

---

[4]Risperdal (generic name: risperidone) "is prescribed for the treatment of schizophrenia, a severe mental disorder that can cause delusions (false beliefs) and hallucinations. It is also used for the short-term treatment of mania associated with bipolar disorder." PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ris1382.shtml.

[5]Depakote (generic name: valproic acid) "is used to treat certain types of seizures and convulsions. It may be prescribed alone or with other epilepsy medications. The delayed-release tablets are also used to control the manic episodes–periods of abnormally high spirits and energy–that occur in bipolar disorder (manic depression)." Id. at
http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/dep1125.shtml.

[6]Topamax (generic name: topiramate) "is an antiepileptic drug, prescribed to control both the mild attacks known as partial seizures and the severe tonic-clonic convulsions known as grand mal seizures. . . . Topamax is also prescribed for the prevention of migraine headaches . . . ." Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/top1541.shtml.

diagnosis remained bipolar disorder. (Tr. 254). On June 20, 2007, plaintiff reported that she had passed her grade at school, but had run away from home once because she had received punishment. She was not compliant with her medication. Her mental status examination was appropriate. Dr. Dowling diagnosed bipolar disorder and increased plaintiff's medication dosages because she was not responding. (Tr. 253). Finally, on July 18, 2007, A.R.D. reported that she was compliant with her medications and had no problems at school, but had been in a fight at home and was experiencing a few mood swings. Dr. Dowling opined that she may not really be compliant. He continued her diagnosis of bipolar disorder and the same medications. (Tr. 252).

Thus, the record as a whole from the relevant time period provides substantial support for the ALJ's findings that plaintiff had less than marked limitations in any domain of functioning and therefore did not functionally equal Listing 112.08.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  25th  day of November, 2008.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE